HOLDOVER SENATOR — JUDGE OF COURT OF APPEALS A State Senator elected in November, 1968, to a four-year term is eligible to run for and be elected a judge of the Court of Appeals for a term beginning January 11, 1971, and is not disqualified from so doing by his membership in the Thirty-Second Oklahoma Legislature. A hold-over State Senator who runs for and is elected as a judge of the Court of Appeals in November, 1970, need not resign his existing senatorial office until he actually accepts the office as judge, and such acceptance ipso facto vacates the office previously held. The Attorney General has had under consideration your letter dated June 6, 1970, in which you request our opinion in response to the following questions: "1. Would a State Senator, who is otherwise qualified, and who was elected in November, 1968, be eligible to be elected Judge of the Court of Appeals, or would membership in the Oklahoma Legislature disqualify him from running for said office. "2. If not, when would a hold-over State Senator, elected as Judge of the Court of Appeals in November, 1970, but who takes office on January 11, 1971, need to resign as State Senator." Pertinent to your questions are Article V, Section 23 of the Oklahoma Constitution and 51 O.S. 6 [51-6] (1961). Pursuant to authority set forth in Article VII, Section 1 of the Oklahoma Constitution, the Second Session of the Thirty-First Oklahoma Legislature enacted Chapter 157
O.S.L. 1968, now codified as 20 O.S. 30.1 [20-30.1] (1969), creating a Court of Appeals. At the same session, the Legislature enacted Chapter 378, O.S.L. 1968, now codified as 74 O.S. 297 [74-297] (1969), whereby the annual salary of each of the judges of the Court of Appeals was fixed at $19,500.00, payable in monthly installments. It appears that no material amendments to either of these statutory provisions were enacted during the first and/or second session of the Thirty-Second Legislature. Article V, Section 23 of the Oklahoma Constitution provides in relevant part: "No member of the Legislature shall, during the term for which he was elected, be appointed or elected to any office or commission in the State, which shall have been created, or the emoluments of which shall have been increased, during his term of office, nor shall any member receive any appointment from the Governor, the Governor and Senate, or from the Legislature, during the term for which he shall have been elected . . . ." (Emphasis added) The statute creating the Courts of Appeals and providing for the election to the offices thereby created and the statute fixing the salary of the judges of said court were enacted by the second session of the Thirty-First Legislature. The creative act becomes effective July 1, 1970, although it was approved April 11, 1968. The act relating to salaries became effective January 13, 1969, although it was approved May 10, 1968. Neither contained the emergency clause. It will, therefore, readily be seen that the session of the Legislature which created the offices of Judges of the Court of Appeals and fixed the compensation therefore antedated the election in November of 1968, of the Senator you refer to. In the case of Wimberly v. Deacon, 195 Okl. 561, 144 P.2d 447, (1944), the court observed, in paragraph number two of its syllabus: "In construing constitutional provisions the court should give words appearing therein their plain, natural and ordinary meaning." Article V, Section 9A of the Oklahoma Constitution provides in pertinent part: "Each senatorial district, whether single county or multi-county, shall be entitled to one senator, who shall hold office for four years . . . ." (Emphasis added) By virtue of the text of the constitutional provision, the term of office of a State Senator is fixed and limited to four years. We have been unable to find cases, in Oklahoma or any other jurisdiction, treating directly with the question of the meaning and effect of the phrases "term for which he was elected," or "his term of office." In Broadwater v. Kindig, 261 P. 264, 80 Mont. 515 (1927), this question was discussed and the Court commented as follows: "It is to be observed that the constitution prohibits the increase or decrease of salary of a public officer 'after his election', whereas the statute forbids such a change being made in the salary of an officer 'during his term of office'. Such being the case the defendant McKelvey had not entered upon his second term when the ordinance was passed, although it did not become operative for 22 days after his induction for a second term. The words used in the statute, 'during his term of office', mean the term the officer is then serving and cannot by any stretch of language be made to cover a previous term." The Court referred to Mechem on Public Officers, in which he states at Section 858: "Although the officer is not entitled to an increase made during his term, he may, if he be re-elected or re-appointed, have it during his second term." Title 51 O.S. 6 [51-6] (1961), provides in pertinent part: "Except as may be otherwise provided, no person holding an office under the laws of the State and no deputy of any officer so holding any office, shall, during his term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the State. . . ." In Gibson v. Crowder, 196 Okl. 406,165 P.2d 628 (1946), the Court held in the syllabus: "If an office held by a person is properly classified as an office under the laws of this state, and thereafter the same person is regularly appointed or elected to another such office, which he fully accepts and enters into, the acceptance of the second office operates ipso facto to vacate the first office theretofore held, and the intention or purpose of the officer with reference to retaining the first office is immaterial. In such case the holding of the second office is valid and not in violation of the law prohibiting the holding of more than one office under the laws of the State." It is therefore the opinion of the Attorney General that your question number one must be answered in the affirmative insofar as it relates to the eligibility of the referenced State Senator to run for and be elected a judge of the Court of Appeals and in the negative with respect to the question of disqualification by reason of his election to membership in the Thirty-Second Oklahoma Legislature in November of 1968. It is the opinion of the Attorney General that your question number two must be answered as follows: A hold-over State Senator who has successfully run for the office of judge of the Court of Appeals in November, 1970, subject to taking office on January 11, 1971, is not required to resign his office as State Senator prior to his actual acceptance of the second office. Such acceptance of the second office ipso facto vacates the first office. (Carl G. Engling) (ED. Note: Dual Office Holding)